UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Richmond Division

CHARLES CURRY and
KENDRA CURRY,

          Plaintiffs,

Civil Action No: 3:08cv623

vs.

WELLS FARGO BANK, et al.,

          Defendants.

## REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS OF DEFENDANT AMERICAN HOME MORTGAGE SERVICING, INC.

Defendant American Home Mortgage Servicing, Inc. ("American"), by counsel, pursuant to Federal Rule of Civil Procedure 12(b)(6) and Local Rule 7(F)(1) does hereby submit the following Reply Memorandum in support of its previously filed Motion to Dismiss the First Amended Complaint filed herein and in opposition to Plaintiffs' Memorandum regarding this Motion filed herein on or about February 13, 2009.

## INTRODUCTION

Notwithstanding that the Motion before this Court is a Motion to Dismiss under Rule(12)(b)(6) and is, therefore, limited to the facts alleged in the First Amended Complaint, and as a result of the fatal deficiencies of those allegations, Plaintiffs begin their Memorandum in Opposition with an "Introduction" section which is not limited to the facts or allegations of the First Amended Complaint, or any inferences fairly drawn therefrom, but is, instead, little more than a harangue against the Defendants and a diatribe against the financial services industry as a whole.

For example, lacking any basis for their claims against American, these Plaintiffs claim "this case arises out of the misapplication of Plaintiffs' mortgage payments by the mortgage loan servicer" and ignore their own acknowledgement in paragraph 10 of the First Amended Complaint that " on or about 2002, Plaintiffs became in arrears on their mortgage loan" which then lead to the first demand for payment to bring their note current. They also ignore the allegations of paragraph 11 that "on or about May, 2005, Plaintiffs became in arrears on their mortgage loan" and then filed for Chapter 13 bankruptcy protection and included their loan in that filing. It is, then, somewhat disingenuous to suggest that the case did not "arise" out of the Plaintiffs' own failure to pay their mortgage loan.

Additionally, in the "Introduction" (and later in Section III of the Memorandum) they infer that American is somehow a successor entity to Defendant Option One Mortgage Corporation ("Option One") when they make no such allegations in the First Amended Complaint and have no basis for making such an inference in their Memorandum.

Finally, the "Introduction" degenerates into a diatribe against the financial services industry by stating "the practices of Wells Fargo, Option One, American, and other mortgage lenders and loan servicers have resulted in the nationwide mortgage industry meltdown which the United States Government is painfully trying to remedy with billions of dollars worth of new financial programs and which the law enforcement agencies of the government have under investigation." Plaintiffs' Memorandum pages 1-2. Even if this misstatement of fact were correct, it would have nothing to do with the merits of the First Amended Complaint. That said, no one on either side of the public policy debate concerning the credit crisis currently facing the United States has argued that it resulted from RESPA violations or failures to respond to Qualified Written Requests by mortgage borrowers. Instead, the debate is over how much blame to place,

respectively, upon (1) borrowers (like the Plaintiffs) who took out mortgage loans beyond their means to pay, (2) government agencies which promoted unrealistic underwriting practices which lead to wholesale lending to borrowers of dubious credit worthiness (3) banks who made those loans and (4) investment firms which "securitized" these dubious loans.   No serious individual would claim that the "mortgage industry meltdown" has anything to do with the facts alleged in the First Amended Complaint.   Those allegations are nothing more than a cynical and demagogic attempt to smear the Defendants in this case in order to prejudice them in the eyes of the Court.

**I.      There is no support whatsoever for Plaintiffs' argument that there is "an unforeseen gap in federal law" which American is attempting to exploit to "avoid its responsibilities."**

Without citing any authority whatsoever to support their contention, Plaintiffs argue in their Memorandum that RESPA "never contemplated or addressed the precise set of circumstances that have been created by the unexpected dissolution of the legal entity known as Option One and the wholesale resumption of Option One's business under a new name, that of American." Plaintiffs' Memorandum page 2. [1]

Having then declared, with no legislative history or case law to support them, that Congress never contemplated the possibility that note holders might change their mortgage servicing agents during the period of a thirty-year mortgage loan, Plaintiffs then go on to suggest that there is "no contingency" in RESPA which addresses such a change occurring between the

---

[1] Again, Plaintiffs here use the language of successor liability which they have not alleged in the First Amended Complaint and for which they lack any factual basis whatsoever. There are no allegations of common ownership, no allegations that Option One was left without sufficient assets to address any liabilities which it could reasonably be expected to incur, no allegations that the two entities are under common management or any of the other touchstones of successor liability. See e.g., Harris v. T. I., Inc., 243 Va. 63 (1992).

3

time period after a Qualified Written Request is served on one servicing agent and the time that another servicing agent replaces it. One is left to ponder why it is Plaintiffs and their counsel were unable to respond to the notice they admit they were provided on June 11, 2008 (less than two weeks after the "Third Qualified Written Request" had been sent to Option One) that American would begin servicing their mortgage account on July 1, 2008 by forwarding the Third Qualified Written Request to the new mortgage service provider and, by doing so, complying with the requirement of 12 USC §2605 that they make such a request to the servicing agent from whom they want a response.

 Indeed, as Plaintiffs acknowledge in their Memorandum, "a servicer's duties are triggered by the receipt of 'a qualified written request from the borrower (or his agent)" Plaintiffs' Memorandum page 3. Instead of complying with the requirement that they provide the servicing agent with the Qualified Written Request, they take the position that the plain language of the statute is to be ignored and a servicer's duties are actually triggered by receipt of such a request <u>from a prior servicing agent</u> rather than the borrower or the borrower's agent.

 Plaintiffs provide no explanation as to how such an interpretation can be squared with the plain language of §2605 to the contrary. Plaintiffs also fail to address how the calculation of American's response deadline would have been accomplished. As noted in their Memorandum, RESPA provides the servicing agent with sixty business days after receiving the qualified written request from its borrower (or the borrower's agent) to respond.

 If the Plaintiffs disregarding of the plain language of §2605 is to be followed, was American's deadline to respond to be calculated using the May 28, 2008 date of the request made to the <u>prior</u> servicing agent, Option One? If not, was it to begin on July 1, 2008 when American began acting as servicing agent of the Plaintiffs' loan? Was it to begin on whatever date

4

Plaintiffs' mortgage file was provided to the new servicing agent? If so, how is that to be determined by the Plaintiffs, American or the Court? These questions expose the obvious fallacy of the Plaintiffs' argument and demonstrate why the drafters of §2605 required the borrowers to make their request to the servicing agent to whom they wanted a response and conditioned any responsibilities of that agent upon the borrowers' compliance with that clear and express requirement.

Plaintiffs' Memorandum also falsely suggests that American has argued that "even though a new servicer may take on all other responsibilities and liabilities of the previous servicer, such as demanding and accepting mortgage loan payments, administering escrow accounts and initiating foreclosure actions, the new servicer is absolved of any requirement or responsibility for satisfying federal statutory liabilities placed on the previous servicer." Plaintiffs' Memorandum page 3.

At no point in its Motion to Dismiss, or Memorandum in Support therefore, has American suggested that it assumed any liabilities whatsoever from the previous servicer. There are no allegations whatsoever in the First Amended Complaint that American took over servicing the Plaintiffs' account because of a merger between it and Option One and, factually, no such merger occurred.[2] Plaintiffs' Memorandum disingenuously suggests that merely requiring them to send their Qualified Written Request to the new mortgage servicing agent --- from which they now want a response --- creates a situation which "is wholly untenable" and constitutes "a complete abdication and absolution of responsibility." Plaintiffs' Memorandum page 3. They then argue that merely requiring them to send their Qualified Written Request to the new mortgage servicing agent would render §2605 "meaningless or nonsensical" and would "allow less than honorable

---

[2] As Plaintiffs' counsel is aware, Option One assigned its servicing agreements with various mortgage lenders to American in exchange for financial considerations.

5

mortgage servicing businesses to simply shuffle the servicing from one to another every eight-three days and forever avoid responding to a consumer's Qualified Written Request otherwise pursuant to RESPA." Plaintiffs' Memorandum pages 3-4.

It is abundantly clear that merely requiring the borrowers to submit their Qualified Written Request to the new mortgage servicing agent --- just as they acknowledged they were required to do with the previous servicing agent --- does not render the statue "meaningless or nonsensical." Furthermore, the requirement that the Court in addressing a Motion to Dismiss must give all reasonable inferences from the facts alleged in a Complaint in favor of the Plaintiff, does not require that the Court suspend disbelief and engage in such flights of fancy as the notion that mortgage servicing agents are going to "shuffle the servicing of a mortgage loan from one to another every eight-three days" in order to avoid responding to the Qualified Written Requests of borrowers. Plaintiffs have made no such allegations in the First Amended Complaint that this activity occurred in this case --- or any other case --- and their allegation that they were notified their mortgage loan would be serviced by a different servicing agent as of July 1, 2008 does not give rise to the inference that the mortgage servicing industry is engaged in such an absurdly counterproductive exercise in order to avoid responding to Qualified Written Requests under RESPA. Plaintiffs' argument is the very definition of a "straw man" invoked to avoid the real merits of the issue.

**II.    The fact that American ultimately provided some information to the borrowers does not constitute "acceptance of their responsibilities under RESPA" as alleged in the Plaintiffs' Memorandum.**

It is not disputed that American ultimately received Plaintiffs' file information, including the Qualified Written Request sent to Option One, and that it undertook to provide information to

6

the borrowers' counsel. The voluntary provision of information, though, does not create legal responsibilities or liabilities under RESPA. As has been discussed previously, §2605 expressly conditions any responsibilities and liabilities of the servicing agent upon its receipt <u>from the borrow or his agent</u> of a Qualified Written Request. Plaintiffs have cited no authority for abrogation of that express requirement and no authority that the voluntary provision of information could create such a liability or impose such an obligation on American.

Likewise, Plaintiffs' attempt to ignore the express language of §2605 that American's duties are triggered by the receipt of a Qualified Written Request from the borrower or his agent by arguing that "the route that a QWR takes in getting to the servicer is not specified in RESPA, only that it must be initiated by a borrow or his agent." Plaintiffs' Memorandum page 4. This argument, again, ignores the clear and unequivocal language of §2605 (a)(1)(A) which states " if any servicer of a federally related mortgage loan receives a qualified written request from the borrower (or an agent of the borrower) for information relating to the servicing of such loan, the servicer shall provide a written response acknowledging receipt of such correspondence within twenty days (excluding legal public holidays, Saturdays and Sundays) unless the action requested is taken in such period." Also, in §2605 (a)(2) --- addressing "action with respect to inquiry"--- the statute reads "Not later than sixty days (excluding legal public holidays, Saturdays and Sundays) after the <u>receipt from any borrower</u> of any qualified written request under paragraph (1) and, if applicable, before taking any action with respect to the inquiry of the borrower the servicer shall" take the actions specified therein.

Plaintiffs ask this Court to disregard the sentence structure which clearly conditions responsibilities of the servicing agent on its receipt of a Qualified Written Request <u>from the borrower</u> for information related to the serving of the loan. This same sentence structure is used

7

in both of the referenced subparts of §2605 and Plaintiffs' suggestion that the Court read out of the provisions these requirement that a servicer receive the Qualified Written Requests <u>from the borrower</u> flies in the face of statutory construction which requires a Court to apply the plain and ordinary meaning of the words used by the drafters of the statute. Given their plain and ordinary meaning, the aforementioned statutory provisions require <u>the borrower</u> (or his agent) to provide the Qualified Written Request to the servicing agent to be held responsible. The drafters did not suggest that requests could be received from any other source or in any other manner and, as discussed herein, to permit such a change would not only require ignoring the clear language of these provisions but would raise unanswerable questions concerning when such a response would have to be provided to the borrower since there is no longer a clearly discernable date upon which it was received.

Plaintiffs' Memorandum suggests that this Court should disregard the ruling in *Parker v. Long Beach Mortgage Company*, 206 WL 2868983 (E. D. Pa) which is in accord with the clear language of the statute. Plaintiffs' Memorandum dismisses *Parker* as "poor support" for American's position and refers this Court to *Carter v. Countrywide Home Loans, Inc.*, 208 WL 4167931 (E. D.Va). In *Carter,* Magistrate Dohnal declined to follow *Parker*, but regrettably, did not provide any elaboration as to why he was declining to follow that authority in the case before him. The opinion referred to "significant facts that distinguish that case from the present one" but the opinion is not at all clear as to why that is the case.

In *Parker,* the Plaintiffs' had sought to assert RESPA claims against a certain Defendant for failure to respond to the Qualified Written Request that the Plaintiffs had sent to the Defendant mortgage company, but <u>not</u> to the Defendant to be held responsible. The *Carter* decision suggested that, in *Parker,* the Plaintiffs had argued that the because the letter was attached to the

Complaint as an exhibit, the Defendant should have been aware of its existence and that the *Parker* Court held that an exhibit attached to a Complaint addressed to a different party can hardly be said to be a Qualified Written Request under RESPA that requires a response by the Defendant at bar. The Magistrate Judge then went on to point out that, in *Carter*, Plaintiffs' agent had sent their Qualified Written Request to Countrywide's Trustee and "while RESPA does not specify whether a letter sent to a loan servicer's Trustee constitutes a 'qualified written request', Countrywide's arguments, without supporting precedent, are insufficient to mandate dismissal of Plaintiffs RESPA claim at this stage of the case where a more complete record may resolve the issue." *Carter,* at page 7.

While American would respectfully submit that Magistrate Dohnel's opinion in *Carter* is not consistence which the language of §2605, it is more significant that *Carter* is more distinguishable from the case at bar than it was from *Parker*. At least in *Carter,* the Qualified Written Request had been sent to the Trustee of the Defendant to be held liable. It had not been sent to an unrelated third party as is alleged to be the case in this matter and as was the case in *Parker*. This factual distinction and the clear and equivocal language mandating that the servicing agent receive the request from the borrower, makes clear that Plaintiffs' reliance on *Carter* is misplaced.

    III.    **Despite their assertions in their Memorandum that paragraphs 55-60 of the First Amended Complaint adequately allege defamation against American, a review of those paragraphs shows otherwise.**

As noted in American's Memorandum in Support of Motion to Dismiss, Plaintiffs' claim for defamation against American fails because the allegations of the First Amended Complaint make clear that the allegedly defamatory conduct occurred prior to American's July 1, 2008

9

assumption of responsibility for servicing Plaintiffs' account.   Paragraphs 50 and 51 are the pertinent allegations to the defamation claim.

In paragraph 50, the Plaintiffs allege that they obtained copies of their Equifax, Experian, and TransUnion credit reports on or about June 6, 2008 --- nearly a month prior to American's start date --- and that each of the reporting agencies reported a derogatory payment history that reflected late payments on the "Option One account ('the Option One Representation')."   Paragraph 51 then alleged that "the Option One Representation was false and inaccurate" and that Option One was not allowed to report derogatorily during the Qualified Written Request investigation and response period.

It is abundantly clear, then, from paragraphs 50 and 51 that the allegedly defamatory reporting <u>must</u> have occurred <u>prior</u> to June 6, 2008.   As acknowledged in paragraph 52 of the First Amended Complaint, though, Plaintiffs were not even notified that American would begin servicing their mortgage loan until a June 11, 2008 notice was provided to them (as required by RESPA) and it was indicated that this loan servicing change would not begin until July 1, 2008. There are no allegations contained in the First Amended Complaint that American began servicing at any point prior to that date.

Notwithstanding the allegations of the First Amended Complaint, Plaintiffs' Memorandum suggest that paragraphs 55-60 of the First Amended Complaint "allege actions taking place from July 2, 2008 - July 16, 2008 wholly <u>after</u> American took over servicing of Plaintiffs' loan." Plaintiffs' Memorandum page 6.

While it is true that paragraphs 55-60 relate to the July 2-16, 2008 time frame, they make <u>no</u> allegations regarding American and, therefore, do not solve Plaintiffs' problem.   Only Option One is discussed in those paragraphs, which reinforces the inadequacy of the defamation claim

against American.

Finally, while Plaintiffs argue that their summary allegations contained in paragraphs 97-101 refer to "Option One and/or American" these summary and conclusory allegations fly in the face of the specific facts alleged in paragraphs 50-60 which make clear they relate only to Option One. As noted in American's Memorandum in Support of Motion to Dismiss, these paragraphs and their conclusions and formulaic recitations of a common law claim of defamation, in the absence of any allegations of actual factual support for those conclusions and recitations, fail to state a valid claim. *Bell Atlantic Corp v. Twombly* 127 S. Ct. 1955, 1964-65 (2007).

## CONCLUSION

For all the reasons stated herein as well as the reasons stated in the Motion to Dismiss and Memorandum in Support of the Motion to Dismiss, the First Amended Complaint fails to state any claims against American and it must be dismissed with prejudice from this action.

Respectfully submitted,

AMERICAN HOME MORTGAGE SERVICING, INC.

By: _____/s/_____

Glen M. Robertson, Esquire
Virginia State Bar No. 30161
Attorney for Defendant American
Home Mortgage Servicing, Inc.
WOLCOTT RIVERS GATES
One Columbus Center, Suite 1100
Virginia Beach, Virginia 23462
(757) 497-6633
Fax: (757) 497-7267
grobertson@wolriv.com

**CERTIFICATE OF SERVICE**

I hereby certify that on the 19th day of February, 2009, I will electronically file the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to the following:

Robin A. Abbott, Esquire
Gary L. Abbott, Esquire
Leonard Anthony Bennett, Esquire
Consumer Litigation Associates, PC
12515 Warwick Blvd., Suite 100
Newport News, VA 23606
*Counsel for Plaintiffs*

Jason M. Krumbein, Esq.
Krumbein Consumer Legal Services
1650 Wilow Lawn Drive, Suite 300
Richmond, VA 23230
KrumbeinLaw@gmail.com
*Counsel for Plaintiffs*

David N. Anthony, Esq.
Michael E. Lacy, Esq.
TROUTMAN SANDERS LLP
1001 Haxall Point
Richmond, VA 23219
David.anthony@troutmansanders.com
Michael.lacy@troutmansanders.com
*Counsel for Experian Information Solutions, Inc.*




Travis A. Sabalewski, Esq.
Reed Smith, LLP
Riverfront Plaza – West Tower
901 East Byrd Street, Suite 1700
Richmond, VA 23219
tsabalewski@reedsmith.com
*Counsel for Option One Mortgage Corporation*


By: _____/s/_____

                                        Glen M. Robertson, Esquire  
                                        Virginia State Bar No.   30161  
                                        Attorney for Defendant American Home Mortgage Servicing, Inc.  
                                        WOLCOTT RIVERS GATES  
                                        One Columbus Center, Suite 1100  
                                        Virginia Beach, Virginia 23462  
                                        (757) 497-6633  
                                        Fax: (757) 497-7267  
                                        grobertson@wolriv.com